The Chancellor.
The complainant, under a judgment and execution in his favor against John Frone, purchased about forty acres of land in the county of Morris, and the same was conveyed to him by the sheriff of the county. The defendant, John Naughright, holds a mortgage on the same property to secure the principal sum of six hundred dollars and interest, which was given by John Frone to J ohn Sharp, and which was afterwards assigned to John Naughright. J ohn Naughright holds, also, another mortgage on the same premises, executed to him by John Frone to secure the principal sum of $400 and interest. John Frone confessed a j udgment subsequent to these mort *300 gages, to his mother, Eve Erone, for the sum of $573.52 of damages, and $20.02 costs of suit. Under this judgment, the same property was sold by the sheriff, and was purchased by Eve Erone for the sum of $300, and she took the sheriff’s deed. Very shortly after, Eve Erone conveyed the property to the defendant, Naughright, for the consideration of one hundred dollars. The complainant’s deed and judgment, under which he holds, are subsequent in point of time to both mortgages, and also to the judgment confessed to Eve Erone and to the deed under which Naughright holds. The bill alleges that the mortgage by Erone to Naughright, and the confessed judgment, and the deed from Eve Erone, are fraudulent, and were contrived by John Erone, Eve Erone, and John Naughright to defraud the complainant, as a creditor of John Erone, and to protect and cover up the property.
The answer of John Naughright is a full denial of the charges of fraud made in the bill. The burthen of proof is, therefore, upon the complainant, and the only question is, whether the fraud is made out by the evidence ?
,, And first, as to the alleged fraudulent mortgage. The allegation of the bill is, that at the time the mortgage was executed, John Erone was not indebted to the defendant, but that the defendant was at that time security for John Erone for $250, and that the mortgage was made to indemnify the defendant against any loss or damage he might sustain as such security, and that no damage or loss has been sustained by the defendant.
The defendant satisfactorily proves, that prior to the execution of the mortgage, he was security for debts of Erone to the amount of the consideration of the mortgage, and that he paid those debts, and that the debts were bona fide debts, and which, as security, the defendant was bound to pay. There is no evidence offered by the complainant to sustain his bill in this particular. He does prove, that at the time the mortgage was executed, the defendant knew of the existence of the complainant s *301 debt against Frone. This fact in no wise impeaches the defendant’s mortgage. He had a perfect right to secure himself in this way, although he knew at the time that the complainant was prosecuting his claim at law, and that the effect of it would be to defeat the complainant in realizing his debt. A debtor has a perfect right to prefer a creditor, and he may make that preference by a mortgage, as well as by any other mode of security. The mortgage is valid subsisting encumbrance upon the premises.
As to the judgment. The bill charges, that at the time the judgment was confessed, Eve Frone was a very aged and infirm woman, and was living in the family of her son John, and was dependant upon her children for her support and maintenance; that at the time the judgment was confessed, her son did not owe her the money, but that the judgment was concocted, by John Frone, John Naughright, and herself, for the purpose of fraudulently covering up the property of John Frone; that the judgment was not confessed at the request of the said Eve Frone, but by the solicitation of her son and John Naughright. As further evidence of the fraud, it is alleged that the property, both real and personal, was struck off to her upon the bids of other persons, but not at her request; that after the sale, John Frone remained in possession, and that she purchased the real estate for the sum of three hundred dollars over and above the encumbrances, and immediately afterwards sold it for the sum of one hundred dollars.
I think it is very clearly proved that the sum for which the judgment was confessed was a debt justly and honestly due and owing from John Frone to his mother, and that the circumstances upon which the complainant relies to make out that the judgment was not bona fide are so explained as not to warrant that conclusion.
It is proved by a witness examined by the complainant, that Eve Frone sold an interest in some land which she *302 held in the state of New York for $1800; that the witness, as her attorney, collected for her of this money be tween eight and nine hundred dollars; that John Frone was largely in debt, and that the witness, at the request of Eve Erone, paid out all this money to liquidate these: debts, except about one hundred dollars; that the judgment was confessed to secure this money, and that the witness made up the account for the attorney, to enable him to prepare the necessary papers for the judgment.
It was argued, by the complainant’s counsel, that the money thus paid out by her attorney was intended by Eve Erone as a gift to her son, and was made to assume the character of a debt, contrary to the original intention of the parties, merely to defraud the complainant. But there is no evidence to warrant this conclusion. The money had been advanced but a short time previous, and the pecuniary circumstances of Eve Erone wei’e not such as to justify such generosity. The complainant, by virtue of the judgment and execution he subsequently recovered against John Erone, sold the personal property, which Eve Erone purchased under her judgment and execution. She realized nothing from the real estate, in consequence of the encumbrances upon it, and she died in the poorhouse of the county.
As to the judgment not being confessed at her request, it is proved, by the attorney, that she was present, and advised with him in reference to it, and that, at her request, he bid for the real estate, and had it struck off in her name. It is true John Erone remained in possession after the sale; but this is sufficiently explained by the fact, that his mother was living with him. It was perfectly consistent with the honafides of the transaction, the mother and son living together, that the son should continue in the control and management of the property. The subsequent sale of the property for $100, after purchasing it for $300, is explained from the circumstances of there being heavy encumbrances upon the property, the interest of *303 which Mrs. Erone was unable to keep down. A foreclosure was inevitable, and she therefore made the best bargain in her power with the mortgagee.
It is true, as was insisted, that the money for which the judgment was confessed might have been honestly due, and yet the judgment not bona fide; and that if it was confessed not for the purpose of securing the debt, but as a fraudulent cover to the property, and to protect it from another creditor, it should be set aside as fraudulent. But to establish the fraud in such a case, the proof of it should bo clear and satisfactory. The fraud must be proved. It would require very strong and convincing circumstances, unexplained, to justify the court to infer a judgment fraudulent, where it was proved, beyond a doubt, that the debt was justly and honestly due. Such was not only the fact with this debt, but it was a meritorious debt, and John Erone would have been perfectly justifiable in securing it, even without the solicitation of his mother. The case made out by the evidence is nothing more than the ordinary one of a debtor preferring one creditor to another.
There was considerable evidence offered to show that the consideration paid by John ifaughright to Eve Erone for the real estate was inadequate. This evidence was proper, as bearing upon the allegation, that the judgment wras used as a means only to protect the property, and get it beyond the reach of the complainant’s judgment. But the testimony is very conflicting as to the value of the property, some witnesses testifying that the property was worth less, and others more, than the defendant gave for it. The difference, as to the value set upon the property, shows that no inference of fraud ought to be drawn from inadequacy of the consideration.