JOHN PRATT CRAMER and ALFRED C. McCLELLAN

*v.*

WARREN M. CALE et al.

[Decided October 23d, 1906.]

1. In a contest between creditors and the wife of their debtor, where she seeks to sustain a conveyance as a security for a debt, the burden is on her of showing the amount of the debt sought to be protected, and is not discharged by a mere general statement regarding the amount due.

2. Evidence examined, and the conveyance to the wife *held* to be only a mortgage, given to secure whatever advancements of moneys she may have made from her separate estate, the equity in the property comprised in the deed of conveyance being subject to the payment of complainants' debt.

On pleadings and proofs.

*Mr. Eli H. Chandler,* for the complainants.

*Mr. Charles C. Babcock,* for the defendants.

BERGEN, V. C.

On the 14th of March, 1904, the complainants and defendant Warren M. Cale executed a bond to a trust company in Atlantic City. A breach of the condition of the bond occurred, and in the month of April, 1905, their liability under the bond being ascertained, so far as it could then be, the obligors executed and delivered a promissory note for the deficiency. The complainants, being required to pay the note without the assistance of Warren M. Cale, one of the makers, commenced a suit against

him for his proportion, which resulted in a judgment, entered April 14th, 1906, for $2,809.71.

At the time the debt upon which the judgment is founded was created the defendant Warren M. Cale was the owner of real estate in Atlantic City, particularly described in the bill of complaint, and thereafter, by deed dated June 10th, 1905, but not acknowledged until June 21st, he conveyed the property to Sarah A. Zimmerman, who in turn conveyed it to Edna, the wife of Warren M. Cale, by deed acknowledged November 10th, 1905. The consideration expressed in these deeds was one dollar and other good and valuable considerations. No consideration was in fact paid at the time of the conveyances, and it is admitted that their sole purpose was to transfer the title from the husband to his wife. The husband acquired the property in 1902, paying therefor the sum of $12,000, which he satisfied by other property and cash to the extent of $6,000, and by accepting title subject to a mortgage of $6,000. The testimony shows conclusively that when the conveyance was made to the wife the husband was in an embarrassed financial condition; that the bond executed by him with the complainants was in default, and was so recognized by him when he joined with the complainants in making the note in satisfaction of the then ascertained deficiency, and it is admitted that after he had stripped himself of the property conveyed to his wife he had no estate to meet his maturing obligations.

It therefore appears that when the debt was incurred upon which the complainants' judgment is based the defendant was the owner of an equity in real estate worth at least $6,000; that thereafter, becoming financially embarrassed and unable to meet his just obligation, he caused the property in controversy to be first transferred to Sarah A. Zimmerman (then in his employ), who held the title from June until November, 1905, when it was conveyed to his wife. This condition of affairs, if not explained, justifies the presumption that the conveyance was fraudulent, and made with intent to hinder and delay creditors in the collection of their debts. The wife, however, seeks to justify the conveyance upon the ground that when she married the defendant Cale she was possessed of personal property amounting to

about $6,000; that, commencing in 1901, she had advanced money to her husband, which he was to repay by putting it in a home, the title to which would stand in her name, and in satisfaction of this promise the conveyances above referred to were made, and that after such conveyances were made she continued to advance money to her husband until the total sum amounted to $5,700. The husband and wife both testified that the sum last mentioned was about the amount advanced and received, but beyond the production of checks, amounting in the aggregate to $631, covering a period beginning in August, 1900, and ending in October, 1905, there is no evidence beyond the statements of the husband and wife, given in the broad terms above recited, to sustain the claim that the wife advanced to or entrusted her husband with the large sum which they now allege to be due from the husband to the wife. No account was ever kept by either, nor was any settlement made, or attempted to be made, to ascertain the amount due at the time this conveyance was made. The wife testified that she had produced all of the checks which she could conveniently find relating to the transactions between them, although other checks may be packed away in her house, but as she was evidently aware that it was necessary to support her claim by producing checks which she had given to her husband, the neglect on her part to search in the only place where she testifies she would be likely to find others, if there were any such, justifies the conclusion that she had no expectation that any such search would put her in possession of other checks to her husband. She knew the importance of the checks in establishing her claim, because she produced certain of them, and it is difficult to account for the non-production of others, which were within her reach, except upon the theory that they do not exist. This is a contest between creditors and the wife of their debtor as to the right of priority in payment, and the facts must be critically examined. A party seeking to sustain a conveyance as a security for a debt would have, and ought to have, the burden of showing the amount of the debt sought to be protected, and it seems to me that this rule ought to be more rigidly applied in the case of an alleged secret trust between a husband and wife, and that something more than a general

statement regarding the amount due ought to be forthcoming to sustain such a claim. This wife claims that the property was to be conveyed to her; the husband testifies that it was not conveyed to her earlier because it would affect his credit, and it is hardly consistent with equitable principles to permit a wife, under such circumstances, to absorb all the property of her husband, to the exclusion of his other creditors, without more convincing proof of the amount of the debt due from the husband to the wife than they have seen fit to present in this case. Under the circumstances shown, I am of the opinion that the conveyance to the wife must be held to be only a mortgage, given to secure whatever may be found due to her, and to that extent only is she entitled to protection in preference to the debt of these complainants, and that beyond securing the wife to the extent to which she has advanced her husband moneys from her separate estate the equity in the property should be made subject to the payment of complainants' debt. It therefore becomes important to determine the amount due to the wife which it was intended should be secured.

Transactions of this character, having for their object the creation of a preference over other creditors of the husband in favor of the wife, must be regarded with suspicion, and where a conveyance for such purpose is attacked for fraud and collusion, it is incumbent on the wife to show the correctness of her claim, to secure which the conveyance or mortgage was given. Especially is this so when the conveyance is made under suspicious circumstances. A conveyance, by way of preference, to a wife, made by the husband upon the eve of insolvency, to secure a debt which had been accruing during a period of five years just previous to the insolvency and conveyance, imposes upon the wife the burden of showing, with reasonable certainty, not only that she had a separate estate, but also the sums advanced to or paid out for her husband from her separate estate. There is no presumption that such advancements were intended as gifts, but the confidential relations existing between a husband and wife would make a fraud easily accomplished unless the wife is called upon to show by affirmative proof, and with some little regard to detail, the amount for which she should be preferred, where the

contest arises between the wife and creditors of her husband, whose debts existed before the conveyance, and which were incurred while he was the ostensible owner of the property.

As was said by the court in *Seitz* v. *Milchell, 94 U. S. 580:* "Such is the community of interest between husband and wife; such purchases are so often made a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors of the husband and the wife there is, and there should be, a presumption against her which she must overcome by affirmative proof."

In the present case the wife had received from the estate of a former husband, five years before her second marriage and nearly ten years before the conveyances complained of were made, about $6,000, and she was able to give, with great particularity, the sources from whence it came and the different amounts received at that time going to make up the total, but, with the exception of some bank stock, a portion of which she still holds, she gave no testimony regarding its subsequent investment, or the sale of the securities in which it was invested, if ever invested, in order to raise money for her husband, and, aside from several checks drawn to the order of her husband for different sums aggregating $631, and covering a period of five years, she was unable to state, with any particularity, at what time she advanced other moneys, or to give the amounts, and calls upon the court to adjudge to her as due from her husband $5,700 upon her unsupported statement, and that of her husband, that about that sum had passed to the husband's hands. Not the slightest attempt was made to give any of the ordinary details which usually surround such transactions, and we are asked to rely upon the bald statements of the wife and husband that at different times during a period of five years the estate of the wife, to the extent claimed, was given to the husband by her, to be used as he saw fit. To assume that such testimony is satisfactory proof of a husband's debt to his wife would open the door to unlimited fraud. The conveyance of lands by insolvent husbands to their wives, in satisfaction of an alleged secret trust

between them, is becoming too common to justify a court of equity in supporting such claims without satisfactory proof that the trust exists, and the character of the proof should be such as to convince the mind of the court that there is a debt due to the wife, and also disclose, with some detail and precision, the amount of it, for "claims of this kind should always be regarded with watchful suspicion, and when attempted to be asserted against creditors upon the evidence of the parties themselves, uncorroborated by other proof, they should be rejected at once, unless their statements are so full, clear and convincing as to make the fairness and justice of the claim manifest. Any other course will encourage fraud and multiply the hazards of most business ventures." *Besson* v. *Eveland, 26 N. J. Eq. (11 C. E. Gr.) 468, 472.* The wife has not maintained the burden cast upon her by any evidence that would justify a finding in her favor beyond the sum of $631. Her case was well prepared and tried by able counsel. The checks showing payments which she produced covered nearly the whole period of her married life, and the fair presumption is that she had produced all that she has. As I have before stated, she claimed that some of her checks are at the house on the disputed property, and that they were so packed away that it was not convenient to examine them, but in the usual course of events checks that are preserved are filed with reference to their dates, and it is difficult to understand how she was able to produce checks covering a period of five years without having had access to the other checks given during the same period, nor does she offer any explanation of this strange circumstance, and I am inclined to the belief that all of the checks showing payments to the husband during the disputed period were selected and produced at the trial.

The conclusion which I have reached is that the wife is entitled to have her conveyance stand as a mortgage to secure the payment of $631, and that the complainants' judgment be decreed to be a lien upon the lands mentioned in the bill of complaint, subject to the payment of $631 to the wife and the mortgage of $6,000 which encumbered the property at the time of the conveyance to the husband, the testimony showing that there was no other encumbrance on the property when it was transferred to the wife.