Complainant seeks to set aside a certain conveyance made by the sheriff of Cape May county to the defendant Wilhelmina Green. The other parties defendant are Arthur H. Green, husband of Wilhelmina, and John C. Dawson, Mrs. Green's brother.
The deed from the sheriff was delivered after a sale under an execution at the suit of Dawson against Mr. and Mrs. Green. The pertinent facts with relation to this litigation are that on September 10th, 1934, Mr. and Mrs. Green gave to Dawson a note in the sum of $2,500 and on the same date executed and delivered to him a bond and warrant to confess judgment in a like amount. The note was payable six months after its date. On September 12th, 1935, more than a year after the giving of the note and bond aforesaid, Mr. Dawson *Page 222 
entered judgment on the bond against the Greens for the full amount of the note and interest, no payments on account thereof having been made in the interim. Execution was issued on September 12th, 1935, but no further steps were taken by Dawson until March 25th, 1936, when he caused alias execution to issue by virtue of which the sale was had and the deed from the sheriff delivered, bearing date April 30th, 1936. Mrs. Green was the purchaser at this sale under a bid of $100. Hers was the only bid. Dawson did not attend the sale but was represented by counsel. Mr. Green did the bidding at the sale and says he paid Dawson's attorney the $100 purchase price, which had been given to him by his wife.
It appears from the above that Dawson's judgment, through this sale, was reduced by $100, less costs, and the evidence discloses that the actual credit, after the deduction thereof, was less than $20, and that the sale divested Mr. and Mrs. Green of all their real estate holdings and left Mr. Green without assets, with no business or profession and out of work.
It further appears that before the sale aforesaid Mr. Green had arranged with Dawson that Mrs. Green should be the purchaser at the sale and in pursuance of that understanding Mr. Green had handed to Mr. Dawson's attorney $100 in cash to cover Mrs. Green's bid.
None of the defendants other than Mr. Green testified at the final hearing, although counsel, in his brief, advised the court that both Mrs. Green and Mr. Dawson were present at the final hearing, ready to testify if complainant had called them.
Complainant contends that the note and bond and warrant were given without consideration and given for the purpose of hindering, delaying and defrauding Mr. Green's creditors, of which complainant was one.
That the complainant was a creditor at the time the note and bond and warrant were executed is not controverted. It is not denied that from June 6th, 1929, when Mr. Green borrowed $5,000 on note that he was at all times indebted to complainant from then on and that the amount due on January *Page 223 
20th, 1936, was $3,400 and that judgment was taken by complainant on August 19th, 1936, for that amount of principal with interest and costs.
Section 12 of the statute of frauds and perjuries (2 Comp.Stat. p. 2618), provides that: "every judgment and execution which have been or shall be contrived in fraud, covin or collusion, with intent to hinder, delay or defraud creditors and others of their lawful actions, debts, damages or demands, shall be deemed and taken" as against those whose action, debts, damages or demands are to be hindered or defeated "to be utterly void and of no effect; any feigned consideration, color or other pretense to the contrary notwithstanding."
As said by Mr. Justice Heher in Hersh v. Levinson Bros.,Inc., 117 N.J. Eq. 131 (at p. 133):
"In determining whether a given conveyance (assuming that the grantor is moved by the requisite intent) is within the condemnation of this statute, the primary inquiries are (1) the existence of a valid consideration and (2) good faith on the part of the grantee."
Let us see what situation the evidence discloses as to these two points of consideration. As to the giving of the note and bond and warrant, Mr. Green, in his testimony, says that he drew both instruments in his office, that they were given to Dawson without demand therefor on his part because he, Mr. Green, and his wife, thought that Mr. Dawson should be protected for the moneys advanced to Mr. and Mrs. Green. He says that the advancement of the moneys started "as far as I can tell, about 1932." The amount of these advances "to both amounted to around $2,500 as near as I can get at it." Mr. Green has no record of the advances and is not sure of the exact amount advanced.
Without quoting Mr. Green further, it appears from his testimony that he has no recollection of any dates of the advancement of moneys by Dawson, no record thereof, nor does he know the amounts advanced nor the amounts advanced to him personally as distinguished from the amounts advanced to Mrs. Green, nor does he know whether the advances were made in Philadelphia, Camden or Wildwood. It further appears that Dawson had never asked for repayment of any *Page 224 
advances before the note and bond were delivered to him, which he had not asked for, and while Mr. and Mrs. Green expected to repay "sometime," no intimation as to when had ever been given to Dawson. In other words, it was, according to the inference to be gathered from Green's testimony, an indebtedness which would never be pressed but which could be paid, if at all, at will and, like the case of Schmidt v. Opie, 33 N.J. Eq. 138, this situation furnishes very cogent evidence, to my mind, that if the complainant's note had not been in existence, so that Mr. Green might expect trouble from that source, no note or bond and warrant would have been given to Dawson. See, also, Ashmead v.Baylor, 59 N.J. Eq. 469; Peter v. Peter, 114 N.J. Law 193.
Just what induced Dawson to issue execution in September of 1935 does not appear, but it clearly appears that in January of 1936 defendant Green had been advised by the bank that the note held by it must be paid on January 20th and that failure to make payment would result in suit. After this notice, in March an alias execution was issued and the sale took place. Mr. Green says that Mr. Dawson knew nothing about his indebtedness to the bank, or its threats. I would have preferred to have Mr. Dawson also say so, especially in view of the fact that Mrs. Green, his sister, knew about the indebtedness to the bank and its threats, and in view of the testimony of Mr. Green that the note and bond had been executed to "protect" Dawson, and this without Dawson's request.
Surely, if Dawson was a bona fide creditor of Mr. and Mrs. Green he could have demonstrated to the court the exact amount of his advances and the dates, amounts and purpose thereof. If he had advanced part of the moneys by check, as Green said he did, he could have produced the evidence thereof. He could have made clear the woeful lack of detail arising out of Green's testimony, which he sat in court and heard. He remained silent, as did his sister, Mrs. Green.
Mrs. Green is still living in the property she bought at Dawson's execution sale for $100. Mr. and Mrs. Green have an agreement with Mr. Dawson as to the balance due on the judgment, which is that they will pay it "a little at a time," *Page 225 
and this agreement, according to Mr. Green, was made "personally" with Mr. Dawson "a few days before the sale."
It is true that fraud is never to be presumed and that the burden is on complainant to prove it and that the evidence thereof must be clear and convincing, but this does not mean that the evidence thereof must be direct. Circumstances appearing boldly, as they do here, suffice for a finding of fraud, as they do in criminal cases where direct evidence is lacking.
What are the circumstances? An alleged past due indebtedness owing from a sister and her husband to a brother, payment of which the brother creditor never demanded; the brother-in-law debtor, becoming financially involved, suddenly determined that the indebtedness should be secured; the debtor himself prepared a note and bond and warrant, which were not asked for by the creditor; an execution issued and was not pressed to sale; notice from an unfriendly creditor of suit; an alias execution by the creditor brother and sale thereunder; an agreement between all of the defendants that the sister should buy at the sale; the purchase for a nominal consideration of property worth over $3,000; a deed to the purchaser and her continued occupancy of the property she purchased, leaving her brother still holding a judgment prior to that of complainant in an amount now equal to the value of the property; at the final hearing, when the brother and sister are charged with fraud, neither took the stand, even though they heard Mr. Green fail to satisfactorily explain the charges and his utter failure to establish a valid consideration for the note and bond.
I am unable, from the testimony, to find that there was a certain and definite indebtedness for which the note and bond and warrant were given. The burden of proving a consideration was on the defendants. Franklin National Bank v. Freile, 116 N.J. Eq. 278;affirmed, 117 N.J. Eq. 405. See, also, Lysakowski v.Blauvelt, 115 N.J. Eq. 501, in which the following rule is affirmed:
"When a grantee attempts to support a conveyance by proof of an antecedent debt, the proof should be convincing and should disclose with some detail and precision the amount *Page 226 
of the debt. `Claims of this kind should also be regarded with watchful suspicion and when attempted to be exerted against creditors upon the evidence of the parties themselves, uncorroborated by other proof, they should be rejected at once, unless their statements are so full, clear and convincing, as to make the fairness and justice of the claim manifest.' Besson v.Evalon, 26 N.J. Eq. 468; Cramer v. Cale, 72 N.J. Eq. 210."
They have failed to carry that burden by any evidence that any where near approaches clarity, either as to amount, time, place or otherwise. I cannot believe Mr. Green and the silence of Mrs. Green and Mr. Dawson raises a presumption against them.Provident Institution for Savings v. Sisters of the Poor ofSt. Francis, 87 N.J. Eq. 424; Johnston v. McKenna, 76 N.J. Eq. 217.
It is thus apparent that irrespective of the question of the insolvency of Mr. Green as of September 10th, 1934, the conveyance should be set aside to the extent hereinafter indicated.
In Bulova Watch Co., Inc., v. Zucker, 113 N.J. Eq. 431, the syllabus reads:
"A debtor will not be allowed to hinder, delay or defraud his creditors by means of a collusive and fraudulent judgment and execution thereon, although the judgment may be recovered in all due legal form in an action."
At p. 433 in the same case the court held:
"If the judgment was recovered by Goldberg against Zucker, not for the purpose of securing the debt, but solely to be used as a fraudulent cover to protect defendant's property from his other creditors, it is a fraud, and the courts may deal with it as they would with any other fraudulent contrivance. Fraud perpetrated by means of a judgment is no more entitled to immunity than a fraud perpetrated by means of a deed or mortgage. Jones v.Naughright, 10 N.J. Eq. 298. That the forms of law have been pursued is no protection in a court of equity, if the result aimed at and reached is fraud. Metropolitan Bank v. Durant,22 N.J. Eq. 35; affirmed, 24 N.J. Eq. 556. *Page 227 
"If a judgment creditor uses his judgment for a fraudulent purpose, as against subsequent judgment creditors, he will be postponed until after they are paid. Mechanics National Bank v.H.C. Burnet Manufacturing Co., 33 N.J. Eq. 487."
The question of fraud having been determined against defendants, it would seem to be unnecessary to determine the question of insolvency, but even though it may be said that complainant's proof falls short of clearly showing the exact financial condition of Green in September of 1934, when the note and bond were executed, the evidence clearly disclosed, as did Mr. Green's letters, that he was insolvent and that the equities he had in real estate were gone and that foreclosure wiped out his holdings, resulting in judgment on deficiency.
It is argued that Mrs. Green was not a debtor of complainant; that it was her own property she bought at the execution sale aforesaid. Mrs. Green was not a debtor of complainant but she sat silently by from 1931, the date of the conveyance to her of thelocus in quo by her husband, and failed to record the deed, with the result that that instrument is void and of no effect against subsequent judgment creditors without notice. Rev.Stat. (1937) 46:22-1.
There is no evidence of notice to complainant of the existence of the deed, in fact, a search by complainant disclosed the title to be in Mr. Green until after sale under the Dawson judgment. It is thus apparent that Mrs. Green, having full knowledge of her husband's overdue indebtedness to complainant, sought to get title through the Dawson sale, with the full realization that her unrecorded deed would not suffice.
The result is that the decree will be that the sale under the Dawson judgment be set aside as against the complainant. *Page 228