Julia Casella v. Commissioner.
Casella v. Commissioner
Docket No. 55081.
United States Tax Court
T.C. Memo 1959-84; 1959 Tax Ct. Memo LEXIS 157; 18 T.C.M. (CCH) 396; T.C.M. (RIA) 59084; April 30, 1959
Stephen P. Cadden, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: This proceeding involves deficiencies in income tax and additions thereto determined against Peter Casella in the amounts and for the taxable years as set forth below: Addition to Tax l
Section 293(b)
Year
Deficiency
I.R.C. 1939
1946
$11,603.31
$5,801.66
1950
3,393.44
1,391.31
1951
1,367.47
The only issue is whether petitioner is liable as transferee of her husband, Peter Casella, to the extent of assets transferred to her, for the above-mentioned deficiencies in tax and additions thereto. By statutory notice respondent determined the extent of petitioner's liability to be $20,954.56, which amount he seeks by amended answer to increase to $20,975.15. *158 There was no appearance at the hearing herein by petitioner, either personally or by counsel. Findings of Fact Julia Casella, a resident of New Jersey, (hereinafter referred to as the petitioner) received a statutory notice of her liability as transferee of the assets of Peter Casella from the district director of internal revenue at Camden, New Jersey. At the time of the hearing herein, Peter Casella, petitioner's husband, was in prison, having been sentenced for various narcotic violations by both the United States District Court for the District of New Jersey, and the United States District Court for the Southern District of New York. As of January 1953, Peter had due and unpaid the following deficiencies in income tax and additions thereto for the taxable years 1946, 1950 and 1951, exclusive of interest: Addition to Tax
Section 293(b)
Year
Deficiency
I.R.C. 1939
1946
$11,603.31
$5,801.66
1950
3,393.44
1,391.31
1951
1,367.47
On January 12, 1953, Peter filed with the Commissioner of Internal Revenue an offer in compromise "In full satisfaction and payment of all outstanding indebtedness for all years through 1951, * * *" wherein *159 he set forth under oath that he possessed as of that time assets having a fair market value of $7,025, and outstanding liabilities of $46,458.80. This offer was accompanied by the sum of $5,000, with the request that it be accepted in full satisfaction of Peter's indebtedness. In the event the offer should be rejected, it was requested that the $5,000 be refunded. Subsequently, the offer was rejected. On March 23, 1954, Peter filed an amended offer in compromise with the Commissioner, providing for a total payment of $9,600. This amount was to be paid by crediting the original payment of $5,000 thereon, an additional $1,000 to be paid upon acceptance of the offer, the balance payable at the rate of $50 per month. This amended offer also was rejected. On December 1, 1955, another offer in compromise was filed by Peter Casella, wherein he set forth the possession of assets having a fair market value of $4,225, and outstanding liabilities of $64,526. The amount offered in compromise was $15,000. This offer was rejected. An investigation conducted by the internal revenue agent assigned to this proceeding, revealed that petitioner's only source of income was the funds given her by *160 her husband, Peter Casella. A search of surrogate records failed to disclose any inheritances which she might have possessed. Petitioner made deposits of cash in her account with The Ventnor City National Bank on the dates and in the amounts as set forth below: Date
Cash Deposit
January 5, 1953
$ 600.00
May 29, 1953
3,850.00
June 1, 1953
300.00
April 2, 1954
749.75
On January 7, 1953, Peter obtained a loan on a life insurance policy owned by him in the amount of $3,525.40, which was paid by the insurer by check drawn to his order. He endorsed this check to the petitioner, and she deposited it in her account with The Ventnor City National Bank on January 10, 1953. On March 15, 1954, Peter Casella borrowed, in the name of Elmer Harris, the sum of $1,800 from the East Side Association in Camden, New Jersey. This money was received in the form of a check made payable to the order of Elmer Harris, and was endorsed by Harris to the petitioner. On March 16, 1954, she deposited this check in her account with The Ventnor City National Bank. On May 17, 1952, a lease was granted petitioner on the premises located at 105 South Dorset Avenue, Ventnor, New Jersey, *161 for a term of one year, commencing June 15, 1952, for an annual rental of $4,000, payable in four installments of $1,000. The first payment was due upon execution of the lease, and the others due on August 1, 1952, October 1, 1952, and January 2, 1953, respectively. In consideration of a further payment of $2,000, petitioner was granted an option to purchase the property on or before the termination of the lease for $41,000. In the event the option was not exercised, the $2,000 was to be forfeited. However, should the option be exercised, petitioner was to be given a credit against the purchase price of the $2,000 payment, and also: "credit against said purchase price for so much of the total rental paid by lessee under this lease as shall remain after deducting therefrom the real estate taxes and fire insurance on the building apportioned to, and the cost of upkeep and repairs expended during, the period of occupancy by the lessee hereunder, and after deduction, further, from said rental, the sum equal to interest on said value of $41,000 at the rate of six (6) per cent per annum from the date of June 15, 1952 to the date of settlement and transfer of title of the premises * * *" *162 Pursuant to the terms of that agreement, Peter Casella, on May 17, 1952, paid to the owner of the premises the sum of $3,000, $1,000 representing the first rental installment, and the balance representing payment of the option price. All subsequent payments were made by Peter Casella to a real estate broker handling the transaction. By agreement, the period within which the option to purchase could be exercised was extended to September 1, 1953. On September 1, 1953, petitioner exercised the option to purchase the property. At the settlement, conducted by the South Jersey Title Insurance Company on September 15, 1953, petitioner received a credit of $5,400 on the $41,000 purchase price of the property. She received a further credit for a deposit of $12,000, represented by the following checks all deposited to the credit of the South Jersey Title Insurance Co. Settlement Funds account: a treasurer's check in the face amount of $6,000, drawn to the order of Julia Casella, which was purchased by Fred Iezzi on August 25, 1953 with funds furnished by Peter Casella; a check in the face amount of $2,000 drawn on the Broad Street Trust Company, Philadelphia, made payable to Peter, Julia *163 and Joseph Casella, representing the proceeds of a loan obtained on August 30, 1953; and a cashier's check dated September 15, 1953 in the face amount of $4,000, drawn to the order of Peter Casella on The Ventnor City National Bank, bearing the endorsements of both Peter Casella and the petitioner. An investigation conducted by the internal revenue agent assigned to petitioner's case, disclosed no bank accounts, savings and loan accounts, safe deposit boxes, or real property in the name of Peter Casella. Petitioner is liable as a transferee of the property of Peter Casella in the amount of $20,825.15. Opinion Respondent has the burden of proving the transferee liability which he determined against the petitioner, [1] which he may do either at law or in equity. [2] It is now settled that such liability is a matter of state law. Commissioner v. Stern, 357 U.S. 39 (1958). *164 The New Jersey law of Fraudulent Conveyances [3] provides, in part, that: "Every conveyance, grant or alienation of real estate, or goods and chattles, or of any estate or interest therein, whether made by writing or otherwise, and every judgment and execution which have been or shall be contrived in fraud, covin or collusion, with intent to hinder, delay or defraud creditors and others of their lawful actions, debts, damages or demands, shall be deemed and taken (only as against those persons, their executors, administrators or assigns, whose actions, debts, damages or demands are or may be hindered or defeated by such covinous or fraudulent devices and practices) to be utterly void and of no effect, any feigned consideration, color or other pretense to the contrary notwithstanding." In interpreting this provision, the New Jersey Court of Chancery said in Camden Safe Deposit & Trust Co. v. Green, 1 A. 2d 308 (1938) at page 310: "It is true that *165 fraud is never to be presumed and that the burden is on complainant to prove it and that the evidence thereof must be clear and convincing, but this does not mean that the evidence thereof must be direct. Circumstances appearing boldly, as they do here, suffice for a finding of fraud, as they do in criminal cases where direct evidence is lacking." By his own admission Peter Casella, as of January 1953, was insolvent. This insolvency continued through at least December of 1955. Concurrent with the filing of his first offer in compromise, wherein he acknowledged his insolvency, Peter embarked upon a series of transfers of propery to his wife; and this was done in the face of, and with full knowledge of unpaid deficiencies in income tax and additions thereto totalling some $23,557.19. In some instances the transfers were executed through the means of "straw parties." In others, they were accomplished through payments of cash. After a careful consideration of these and other circumstances which are attendant upon this record, we are of the opinion that the transfers made by Peter Casella to the petitioner, now under consideration, were made with the intent to defraud an existing creditor, *166 the United States, of its debt owing from him in the form of income taxes, additions thereto, and interest for the taxable years 1946, 1950 and 1951. Under circumstances such as these, the burden of proving that the transfer was for a fair consideration is upon the grantee. Schwartz v. Battifarano, 67 A. 2d 148 (N.J. Sup. Ct., 1949); Camden Safe Deposit & Trust Co. v. Green, supra; Cramer v. Cale, 73 A. 813 (N.J. Ch., 1906). This she has not attempted to do. Thus, we conclude that petitioner is liable as a transferee for the deficiencies in income tax, additions thereto and interest determined against Peter Casella, as set forth above, to the extent of the property received by virtue of the various transfers set forth below. Our Findings of Fact indicate that the following transfers were made by Peter Casella to the petitioner within the period under consideration, and we have concluded that she is liable as his transferee to the extent thereof: Date
Amount
Method of Transfer
1/ 5/53
$ 600.00
Cash deposit made by peti-
tioner
1/10/53
3,525.40
Life insurance loan obtained
by Peter, the proceeds of
which were deposited by
petitioner
5/29/53
3,850.00
Cash deposit made by peti-
tioner
6/ 1/53
300.00
Cash deposit made by peti-
tioner
9/15/53
10,000.00
Deposit by petitioner on
purchase price of prop-
erty in form of checks
obtained by funds fur-
nished solely by Peter
Casella
3/16/54
1,800.00
Loan obtained by Peter
Casella the proceeds of
which were deposited by
petitioner
4/ 2/54
749.75
Cash deposit
Total
$20,825.15
*167 Inasmuch as the record indicates petitioner's only source of income was the funds given her by Peter, we have included in the above transfers the various cash deposits made by her during the period under consideration. Further, though the evidence reveals that on September 15, 1953, a deposit of $12,000 was made on the South Dorset Avenue property, we have included in the above only $10,000 of that amount. As noted in our Findings, this deposit was made up of various checks endorsed to the South Jersey Title Insurance Company, among which was a check in the face amount of $2,000 drawn to the order of Peter, Julia and Joseph Casella which represented the proceeds of a loan. Since the record does not indicate which of the payees was liable for this debt, or whether they were jointly liable, we have included no part of the $2,000 in the transfers making up petitioner's liability as a transferee. Respondent contends the $5,400 credit which petitioner received on the purchase price of the South Dorset Avenue property constituted a transfer to her in September of 1953, the date when the option to purchase was exercised and settlement made. However, the amounts making up that credit did *168 not constitute a prepayment of the purchase price, nor were they security for the performance of the lease-option agreement. Rather, they were paid as rent, acquiring for petitioner the right to immediate use of the premises for a term, and as consideration for the option, giving her the continuing right to purchase the property for an agreed price throughout the life of the option. We are therefore of the opinion that petitioner received the benefit of these amounts when they were paid, and that they were transfers to her as of the date of their payment. That they were to be credited on the purchase price, in the event of the option's exercise, is immaterial in light of the fact that once paid they were not refundable. See Joseph A. Harrah, 30 T.C. 1236 (1958). Since there has been no showing that Peter was insolvent at the time these amounts were paid, i.e. May 17, 1952, in the case of the $2,000 option price, and on or before August 1, 1952, October 1, 1952, and January 2, 1953, in the case of the various installments of rent, [4] we are unable to conclude that they were made by him with an intent to defraud creditors within the purview of section 25:2-3 of the New *169 Jersey Statutes. We therefore have not included the $5,400 credit in the transfers making up petitioner's liability as a transferee. Neither have we included in these transfers the various payments allegedly made by Peter by way of mortgage installments on the South Dorset Avenue property. Respondent contends that these installments, each in the amount of $1,250, were made on December 15, 1953, June 15, 1954, and September 15, 1954. In support of this contention he relies principally on the following colloquies between counsel and the internal revenue agent: "Q. December 15, 1953, was there a mortgage payment by Peter Casella to Miss Howe on account of that property? "A. Yes, she received mortgage payments of $1,250.00 on the principal, plus the interest. * * *
"Q. On September 15, 1954 was there a $1,250.00 transaction relative to a mortgage payment in cash to Miss Howe? "A. Yes. "Q. And a second transaction on the same date for a like amount to Miss Howe as payment on a mortgage of $1,250.00? "A. There is one payment of September 15, 1954 of $1,250.00 "Q. There is *170 also one, is there not, on June 15, 1954? "A. Yes sir." He further relies upon certain testimony of Miss Nancy Howe, the real estate broker through whom the property was purchased. However, her testimony merely indicates that after the settlement all payments on the property were made through her, and that on some unspecified date she received a payment from Peter on account of taxes, a penalty, mortgage principal and interest. By statute the burden is upon respondent to establish the transfers upon which the alleged transferee liability has been determined. We do not believe he has carried that burden with respect to these contended for mortgage installment payments. Decision will be entered under Rule 50. Footnotes
1. SEC. 1119. PROVISIONS OF SPECIAL APPLICATION TO TRANSFEREES. (a) Burden of Proof. - In proceedings before the Board the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax. ↩
2. SEC. 311. TRANSFERRED ASSETS. (a) Method of Collection. - The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds): (1) Transferees. - The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.↩
3. N.J. Stat. Ann. § 25:2-3↩.
4. In fact, the record fails to reveal when the last three installments of rent were paid.↩