HAROLD B. SCHWARTZ, PLAINTIFF-RESPONDENT, v. NICHOLAS BATTIFARANO, ALSO KNOWN AS NICK BATTIFARANO, AND LILYAN E. BATTIFARANO, ALSO KNOWN AS LILLIAN L. BATTIFARANO AND LILLIAN BATTIFARANO, HIS WIFE, GEORGE DE MEA AND LENA DE MEA, HIS WIFE, DEFENDANTS-APPELLANTS.

Argued June 6, 1949—Decided June 30, 1949.

*Mr. Robert S. Hartgrove* argued the cause for the defendants-appellants.

*Mr. George Rothstein* argued the cause for the plaintiff-respondent.

The opinion of the court was delivered by

WACHENFELD, J. This appeal was originally to the Appellate Division of the Superior Court from a summary judgment in favor of the respondent entered by the Chancery Division. As in several other instances, we certified the appeal here on our own motion to enable the Appellate Division to dispose of all matters on its calendar that were ready for argument before the summer recess.

Plaintiff-respondent brought suit to set aside as fraudulent a conveyance of real property by the appellants Battifarano to the appellants DeMea. In the summer of 1947, respondent, a practicing physician in Union City, loaned money at various times to the Battifaranos at interest rates ranging from ten

per cent. upward and received in return checks made out to "Cash" for the amount of the loan and interest and signed by Mrs. Battifarano. Default occurred and the respondent started suit against the Battifaranos on four of the checks in the Hudson County Court of Common Pleas on August 13, 1948. The Battifaranos were served on August 16th and although they retained counsel, neither an answer nor an affidavit of merits was filed. On September 9th a default judgment in favor of the respondent was entered in the sum of $2,548.74 and $56.35 costs.

Six days prior to the entry of the judgment, on September 3, 1948, the Battifaranos conveyed certain real property, their residence in North Bergen, to appellants George and Lena DeMea for a stated consideration of $1.

On September 14, 1948, five days after entry of the default judgment, Schwartz filed the present bill alleging the facts set forth above and that he was unable to find any other property of the Battifaranos out of which to satisfy his judgment, and asking that the conveyance be set aside as fraudulent. To this bill the Battifaranos filed a separate answer and counterclaim and the DeMeas filed a separate answer. On motion of the plaintiff-respondent, the Battifaranos' answer and counterclaim was stricken on January 21, 1949, with leave to file an amended answer.

The four appellants filed a joint amended answer and counterclaim on January 31, 1949, wherein they set forth five separate defenses: (1) the loans were made by the respondent knowingly to aid and facilitate the gambling enterprise, bookmaking, carried on by Nicholas Battifarano; (2) the loans were made at usurious rates of interest; (3) the default judgment was based on loans made at usurious rates of interest and made with knowledge that the proceeds were to be used to facilitate the operation of a gambling enterprise; (4) the conveyance of real estate was made in full satisfaction of a debt due and owing from Nicholas Battifarano to George DeMea; (5) the respondent had not levied execution on the default judgment and so exhausted his legal remedies. The counterclaim demanded that a judgment of restraint be issued

against the respondent "preventing him from all further actions at law upon the said judgment, and costs."

Respondent moved to strike the amended answer and counterclaim and for summary judgment on the following grounds: the first, second and third defenses were false in fact, insufficient in law, *res judicata* and a collateral attack on the judgment of the Court of Common Pleas; the fourth defense was false in fact and insufficient in law; the fifth defense was insufficient in law and immaterial; the counterclaim failed to state a claim on which relief could be granted, was false in fact and insufficient and was *res judicata* by reason of the judgment previously entered in the Court of Common Pleas.

Supporting this motion, respondent filed an affidavit denying knowledge of Battifarano's gambling activities or of the use to which the money was put until after all the loans had been made, but admitting usurious interest rates and asserting that Battifarano informed him that he, Battifarano, was in debt to the extent of about $30,000, was being pressed by creditors, and would put his house "beyond * * * reach" if the respondent tried to get it. This is supported to some extent by the affidavit of the intermediary who acted as go-between in arranging the loans.

The answering affidavit filed by Nicholas Battifarano states emphatically and with supporting detail that the plaintiff, before the first loan was made, knew about the gambling enterprise and that the money was needed for its operation. George DeMea's affidavit states that the conveyance of the real property was to secure a *bona fide* and unpaid indebtedness of $4,500 owed by Nicholas Battifarano to him.

On the foregoing pleadings and affidavits, the Chancery Division, on February 17, 1949, struck the amended answer and counterclaim and entered summary judgment setting aside as fraudulent, null and void the conveyance from the Battifaranos to the DeMeas. From this order an appeal is taken.

So much of the amended answer as set up the defense of usury was properly stricken. Usury, if properly

pleaded and proved, would have been a partial defense to the action brought in the Hudson County Court of Common Pleas. That action, however, was allowed to go by default, no answer or affidavit of merits having been filed. Usury must be timely and strictly pleaded. *Dunlap v. Chenoweth,* 88 *N. J. Eq.* 496 (*Ch.* 1917); affirmed, 90 *N. J. Eq.* 601 (*E. & A.* 1919); *Kobrin v. Null,* 96 *N. J. Eq.* 41 (*Ch.* 1924); affirmed, 97 *N. J. Eq.* 546 (*E. & A.* 1925).

 The defense in the amended answer that the default judgment sued upon was based on moneys knowingly loaned to aid or facilitate a gambling enterprise is, however, of a nature different from the defense of usury. The public policy of this State, expressed in its statutes, has always been one of strong opposite to gambling and to debts based on gambling contracts or enterprises. *R. S.* 2:57–3, a restatement of the Gaming Act, *Rev.* 1877, *p.* 458, provides:

"All promises, agreements, notes, bills, bonds, contracts, judgments, mortgages, leases or other securities or conveyances which shall be made, given, entered into or executed by any person, the whole or part of the consideration of which is for any money, property or thing in action whatsoever laid, won or bet in violation of *section* 2:57–1 of this title, or for reimbursing or repaying any money knowingly lent or advanced to help or facilitate such violation, shall be utterly void and of no effect."

In pursuance of this policy, the courts of this State have refused to aid in the collection of foreign judgments based upon gambling transactions, even though the transaction was legal in the state where it was made and the judgment was recovered. *Flagg v. Baldwin,* 38 *N. J. Eq.* 219 (*E. & A.* 1884); *Minzesheimer v. Doolittle,* 60 *N. J. Eq.* 394 (*E. & A.* 1900). A check given in payment of a gambling debt has been held void even in the hands of a holder who has taken it in good faith, for value and without notice of any infirmity. *Fisher v. Brehm,* 100 *N. J. L.* 341 (*E. & A.* 1924). In this case, the court, referring to the section of the Gaming Act quoted above, said:

"By this act it was declared that the legislative policy of New Jersey was to hold utterly void and of none-effect all obligations given for gambling debts."

■■ Equity will not normally relieve against a judgment at law unless there is some independent equitable ground for such action, and this is particularly true where existing defenses have not been asserted in the law action. Here, however, the applicable section of the statute expressly declares judgments based on gambling transactions, or on loans knowingly made to aid in such transactions, to be void and of no effect. In view of the emphatic declaration of public policy by the Legislature with respect to gambling debts, and the strict enforcement of that policy by the courts, a judgment based on a gambling transaction, declared void by the statute, is subject to collateral attack.

"A party or privy is not precluded or estopped, however, from attacking a judgment which is void *ab initio*. Such a judgment amounts to nothing and has, of course, no force as *res adjudicata*. A judgment so void may be attacked either directly or collaterally." *Second National Bank of Philadelphia v. Thompson*, 141 *N. J. Eq.* 188 (*Ch.* 1947).

■ In this action the defense of gambling was affirmatively pleaded in the amended answer and was supported by the affidavit of Battifarano. It was also asserted as the foundation for the counterclaim to restrain enforcement of the default judgment. The defense and counterclaim were therefore improperly stricken.

■ The fourth defense pleaded in the amended answer, that the conveyance was made in satisfaction of a pre-existing indebtedness, would be a complete defense to this action if sustained by the evidence, provided that the value of the property conveyed was reasonably proportionate to the indebtedness. It does not, therefore, come within the purview of *Rule* 3:12-6. It is true that when a grantee offers proof of an antecedent debt to support a conveyance attacked as fraudulent, the proof must be clear and convincing. *Bess v. Eveland*, 26 *N. J. Eq.* 468 (*Ch.* 1875) ; *Lysakowski v. Blauvelt*, 115 *N. J. Eq.* 501 (*Ch.* 1934). The burden of proving the consideration is on the grantee. *Cramer v. Cale*, 72 *N. J. Eq.* 210 (*Ch.* 1906) ; *Camden Safe Deposit & Trust Co. v. Green*, 124 *N. J. Eq.* 221 (*Ch.* 1938). If a fair consideration is

proved, however, it will support the conveyance even though made at a time when the grantor was insolvent. In *Hersh v. Levinson Bros., Inc.*, 117 *N. J. Eq.* 131 (*E. & A.* 1934), the court, reversing a decree which set aside a chattel mortgage as fraudulent, said:

"That the indebtedness existed is not questioned. But it is said that a pre-existing indebtedness is insufficient, and that a present consideration is necessary to support the mortgage. This is not the law. The pre-existing indebtedness, standing alone, was unquestionably sufficient. It is well settled that it is the right of a debtor who is in failing circumstances or insolvent to prefer one of his creditors; and it is equally the right of the creditor, acting honestly and in good faith, to obtain security for the debt from his debtor, or to extinguish the debt by purchasing property of the debtor which is of the same value as the credit surrendered."

Although the burden rests upon the grantee, it is not incumbent upon him to furnish that proof by affidavits filed in answer to a motion to strike a defense. The affidavit of George DeMea asserted the existence and the amount of a pre-existing indebtedness. This raised an issue of fact which, if sustained by the proof adduced at the trial, would constitute a complete defense to the action. In these circumstances, the motion to strike the defense should have been denied and the appellants allowed to put in proof to support their pleading.

Appellants do not, in this appeal, raise the question of the validity of the fifth defense, the failure of the plaintiff to levy execution before bringing action to set aside the conveyance, presumably because this is specifically dealt with by the provisions of *R. S.* 25:2–15, *subd.* 1, *par.* (b).

The order of the court below is reversed except as herein sustained and the case remanded for further proceedings not inconsistent with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.