Ezra W. KARKUS, Receiver in Bankruptcy of Vreeland L. Siefert, Bankrupt, Plaintiff,

v.

Vreeland L. SIEFERT, Myrtle A. Siefert, John F. X. Greene, Sudler Construction Co., a corporation, Seymour Paskow, Wilmore Co., a corporation, Defendants.

Civ. A. 505–57.

United States District Court
D. New Jersey.

March 17, 1958.

Gross & Garfield, Red Bank, N. J., for plaintiff.

Kleinberg, Moroney & Masterson, James E. Masterson, Newark, N. J., for defendants John F. X. Greene, Sudler Const. Co., and Seymour Paskow.

A. Henry Giordano, Long Branch, N. J., for defendants, Vreeland L. and Myrtle A. Siefert.

FORMAN, Chief Judge.

This is an action brought by Ezra W. Karkus, Receiver in Bankruptcy of Vreeland L. Siefert and Myrtle A. Siefert, against them, John F. X. Greene, Sudler Construction Company, Seymour Paskow and Wilmore Company. Plaintiff has discontinued it against the Wilmore Company. The purpose of the suit is to set aside certain deeds and mortgages alleged to have been made fraudulently during insolvency. Evidence has been heard and briefs have been submitted.

It is undisputed that on April 18, 1957, involuntary petitions were filed against Vreeland L. and Myrtle A. Siefert. They were adjudicated bankrupt on May 8, 1957. Plaintiff was appointed receiver in each case May 20, 1957, and elected trustee, January 8, 1958.

Vreeland L. Siefert was the major stockholder of the Lincoln Foundry, Inc., which was adjudicated a voluntary bankrupt on January 9, 1957.

Together with his wife, as tenants by the entirety, they owned their residence on approximately five and one half acres of land located in Oceanport, Monmouth County, New Jersey, referred to hereinafter as the Oceanport property. Prior to December 20, 1956, it was encumbered with a first mortgage of $15,000, held by the Carteret Savings and Loan Association; a second mortgage of $9,500, held by the Rutledge Realty Co.; and a third mortgage of $5,000, held by the Wilmore Company. The latter two mortgages, originally for $24,000 and $7,000, respectively, were arranged by defendant Seymour Paskow, and were given as collateral security for loans to the Lincoln Foundry, Inc.

On December 20, 1956, the Sieferts gave to defendant Paskow a mortgage in the sum of $8,500, on the Oceanport property, allegedly as security for prior loans made by Paskow to Siefert for the operation of the Lincoln Foundry. On January 8, 1957, the Oceanport property was conveyed by Vreeland L. and Myrtle A. Siefert, without consideration, to John F. X. Greene. It was subsequently conveyed, subject to the $15,000 first mortgage only, to the Sudler Construction Company, on April 23, 1957, for a $4,000 purchase money mortgage given to Greene, and $1,000, in cash, alleged to have been given by Sudler Construction Co. to Paskow. The $1,000 in cash is further alleged to have been returned by Paskow to Sudler Construction Company on the subsequent refusal by the Referee in Bankruptcy to approve a sale of the property.

Defendants Vreeland L. and Myrtle A. Siefert deny any wrongdoing. Defendants Paskow, Greene, and Sudler, however, do not contest plaintiff's demand for a judgment setting aside the conveyance to Greene, the subsequent conveyance to Sudler, and the mortgage from Sudler to Greene. Defenses originally raised relative to the jurisdiction

of this court over the instant case and the right of the receiver to bring this suit, were dropped at the pretrial conference.

The sole issue now concerns the Siefert-Paskow mortgage. Plaintiff contends (1) that this mortgage is part of a larger scheme which involved the deed from Siefert to Greene, and the deed and mortgage transaction between Greene and the Sudler Construction Co., and that each transaction "was fraudulent and made with intent to hinder and delay the creditors of the bankrupt"; and (2) "that it [the Siefert-Paskow mortgage] also constituted a preference". Both contentions were denied by Paskow, who, for his part, asserts that the $8,500 mortgage was to secure antecedent indebtedness, except for a sum of $525.12, which he claims to have given Vreeland L. Siefert on January 24, 1957, in reliance on the said mortgage.

The evidence disclosed that Paskow began a series of money transactions with Vreeland L. Siefert and the Lincoln Foundry, Inc. in 1954. It was shown that Lincoln Foundry, Inc. drew checks to Paskow from January to November of 1956 in the following dates and amounts:

Checks Issued by Lincoln Foundry, Inc. to Seymour Paskow During 1956

| Date Issued | Amount | Exhibit No. |
|---|---|---|
| Jan. 2 | $ 250.00 | 51A |
| Jan. 2 | 39.00 | 33 |
| Feb. 3 | 750.00 | 46 |
| Feb. 7 | 1,000.00 | 47 |
| Feb. 9 | 150.00 | 51B |
| Feb. 9 | 250.00 | 51C |
| Feb. 10 | 750.00 | 48 |
| Mar. 8 | 150.00 | 49G |
| Mar. 9 | 750.00 | 37 |
| Mar. 16 | 750.00 | 36 |
| Mar. 23 | 150.00 | 49 |
| Mar. 30 | 750.00 | 38 |
| Apr. 6 | 750.00 | 39 |
| Apr. 23 | 1,187.51 | 40 |
| Apr. 26 | 100.00 | 49E |
| May 10 | 100.00 | 49D |
| May 16 | 475.00 | 35 |
| May 16 | 525.00 | 34 |
| May 18 | 100.00 | 49B |
| May 23 | 100.00 | 49C |
| June 8 | 200.00 | 49A |
| June 26 | 200.00 | 49H |
| Aug. 9 | 240.45 | 50B |
| Sept. 6 | 250.00 | 50A |
| Oct. 15 | 2,500.00 | 41 |
| Oct. 15 | 250.00 | 50C |
| Oct. 30 | 523.00 | 42 |
| Oct. 30 | 150.00 | 50D |
| Nov. 1 | 2,000.00 | 43 |
| Nov. 5 | 200.00 | 50E |
| Nov. 7 | 2,000.00 | 44 |
| Nov. 15 | 2,000.00 | 45 |
| Total | $19,589.96 | |

It appeared that Paskow arranged the Rutledge Realty mortgage of December 23, 1954 and the Wilmore Company mortgage of February 8, 1956, which covered the Oceanport property as collateral security for borrowings of Lincoln.

Paskow asserts that the antecedent indebtedness supporting the Siefert mortgage to him was based upon four promissory notes, the dates and amounts of which are as follows:

| Date | Amount | Exhibit No. |
|---|---|---|
| Oct. 25, 1955 | $2,500 | P1 |
| Oct. 1, 1956 | 2,000 | P2 |
| Oct. 30, 1956 | 2,500 | P3 |
| Nov. 16, 1956 | 2,000 | P4 |
| Total | $9,000 | |

He concedes that he became "leery" of the financial condition of the Sieferts on December 20, 1956, which prompted him to ask them for the mortgage upon the Oceanport property for security. Then followed the circumstances, as he related them, whereby he caused the Sieferts to deed the property to an office associate of his, John F. X. Greene, concededly only a "straw" man, on January 8, 1957 who, with his wife, on April 23, 1957, conveyed the property to Sudler Construction Company, the proprietor of which was a real estate developer, an old time acquaintance of Paskow. The purported consideration of

the latter transaction was $20,000, of which $1,000 was in cash, subject only to a mortgage held by the Carteret Savings and Loan Association, and providing for a purchase money mortgage to be given by Sudler Construction Company on the date of the deed in the sum of $4,000.

Paskow asserted that it was natural for him to want to protect the money due him from the Sieferts and that it occurred to him that it would be a good idea if he could sell the Oceanport property for them with the understanding that out of the proceeds of such sale his indebtedness would be liquidated and any balance remaining would be turned over to Vreeland Siefert. Later it occurred to him that his friend Sudler might be able to develop the acreage surrounding the residence on the Oceanport property. He had John F. X. Greene execute the deed to Sudler Construction Company. Paskow did, indeed, together with Sudler, endeavor to persuade a zoning authority to permit a subdivision of the Oceanport property into lots and the construction of houses thereon, but they were unsuccessful. Later Paskow placed the property in the hands of a real estate broker, who actually arranged a sale of it for $32,500. The Bankruptcy Court, however, intervened and would not permit the sale in the light of the pendency of this suit.

Let us assume at this point that there was a consideration of antecedent indebtedness to support the mortgage the Sieferts gave Paskow in the sum of $8,-500 on December 20, 1956. The plaintiff urges that even under such circumstances the mortgage must be set aside because it was given as a preference to Paskow over other creditors within four months of the date of the bankruptcy of the Sieferts, which occurred on April 18, 1957.

The Bankruptcy Act provides:

"(a) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insol-vent and within four months before the filing by or against him of the petition in bankruptcy, * * *"

"(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, *reasonable cause* to believe that the debtor is insolvent * * *." (Emphasis supplied.) Sec. 60 [11 U.S.C.A. § 96].

Paskow knew from his voluminous dealings with Siefert that Lincoln Foundry, Inc. was in dire financial difficulties, so dire, in fact, that it was sold in bankruptcy for little more than its secured encumbrances, leaving nothing for its general creditors. All during 1956 he was cashing and exchanging checks, or lending money to it. This was disclosed not through any evidence produced by him, but by reason of plaintiff's production of what records were available in the files of the defunct Lincoln Foundry, Inc. and the photostatic copies of its checks to Paskow retrieved from its bank. Paskow knew of the drainage of the Sieferts' equity in the Oceanport property to furnish collateral for loans to be poured into the bottomless pit that Lincoln Foundry, Inc, turned out to be. He arranged for at least two of the mortgages thereon beside his own last effort of December 20, 1956. He claims that parallel with the financing of Lincoln Foundry, Inc., on four separate occasions he advanced funds to Siefert in the aggregate of $9,000, although only $500 was repaid on the whole, and that in dribs and drabs, in cash, without a receipt passing. No rational man could have undertaken this pumping of money around the sclerotic arteries of the financial bodies of Lincoln Foundry, Inc. and Siefert without knowing that both were insolvent within the meaning of the Bankruptcy Act, and if Paskow did not, as he states, he is burdened with the onus that he should have known it.

The test of knowledge of insolvency sufficient to establish a voidable

preference, as laid down by Section 60, sub. b of the Bankruptcy Act, supra, is *"reasonable cause* to believe the debtor is insolvent." "Reasonable" is here construed in its classical sense of the impact that the same facts would have on a reasonably intelligent man, similarly placed. In the light of the foregoing factual presentation and documentation, the answer to whether Paskow had reasonable cause to believe that Vreeland Siefert was insolvent on December 20, 1956, must inescapably and emphatically be in the affirmative.

Plaintiff, however, seeks more than the finding of a voidable preference under Section 60, sub. b. He attacks the mortgage transaction as a fraudulent scheme exposed in all its nakedness by the defendant Paskow's inability to substantiate his claim of an antecedent indebtedness, thus not only depriving Paskow of the status of a preferred creditor, but destroying his claim to any kind of creditor status.

Section 70, sub. e(1) of the Bankruptcy Act [11 U.S.C.A. § 110, sub. e(1)] [1] invests in the Trustee in Bankruptcy the power to void a transfer which, under federal or state law, is fraudulent as against any creditor of the debtor.

The sections most pertinent to the instant proceedings are 67, sub. d(2) (a § d) [11 U.S.C.A. § 107, sub. d(2) (a [2] d). The applicable New Jersey statute is N.J.R.S. 25:2–10, N.J.S.A., which provides as follows:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Both under federal [3] and New Jersey law,[4] fair consideration embraces antecedent indebtedness. However, though the ultimate burden of proof is on the trustee to establish by a preponderance of the evidence that a transfer was fraudulent, it is incumbent upon the transferee to go forward with proof of the antecedent indebtedness once a prima facie case of fraudulent transfer has been made out. See 4 Remington on Bankruptcy, § 1641, (Burden of Proof), (1957 edition). And further, at § 1658,

---

1. "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor." 11 U.S.C.A. § 110, sub. e(1).

2. "Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; * * * or (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors." 11 U.S.C.A. § 107, sub. d(2).

3. "For the purposes of, and exclusively applicable to, this subdivision (d): * * consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained." 11 U.S.C.A. § 107, sub. d(1) (e) (1 & 2) ; [Sec. 67, sub. d(1) (e) (1 & 2) ].

4. "Fair consideration is given for property or obligation * * * (b) When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained." N.J.R.S. 25:2–9, N.J. S.A.

page 198, "[t]he essentials of voidability are to be determined \* \* \* by the law of the particular state \* \* \*."

■ It is established, under New Jersey law, that the proof necessary to establish an antecedent debt must be "clear and convincing." See Schwartz v. Battifarano, 1949, 2 N.J. 478, 484, 67 A. 2d 148; Camden Safe Deposit & Trust Co. v. Green, Ch.1938, 124 N.J.Eq. 221, 225, 1 A.2d 308. Defendant Paskow, however, maintains that a correct reading of the Schwartz and Camden cases would reveal that the burden of establishing antecedent indebtedness by clear and convincing evidence is placed upon a defendant only "upon proof of a conveyance or transfer actually fraudulent."

I cannot agree with defendant's interpretation. In both cases, a conveyance was attacked as fraudulent. And in both cases proof of antecedent indebtedness would have been a valid defense. In Schwartz v. Battifarano, supra, the following language appears at pages 484, 485, of 2 N.J. and at page 151 of 67 A.2d:

> "It is true that when a grantee offiers proof of an antecedent debt to support a conveyance attacked as fraudulent, the proof must be clear and convincing. \* \* \* The burden of proving the consideration is on the grantee. \* \* \* If a fair consideration is proved, however, it will support the conveyance even though made at a time when the grantor was insolvent."

And in Camden Safe Deposit & Trust Co. v. Green, 124 N.J.Eq., at pages 225, 226, 1 A.2d at page 310 the court states:

> "I am unable, from the testimony, to find that there was a *certain and definite indebtedness* for which the note and bond and warrant were given. The burden of proving a consideration was on the defendants. Franklin National Bank v. Freile, 116 N.J.Eq. 278, 173 A. 93; affirmed 117 N.J.Eq. 405, 176 A. 167. See, also Lysakowski v. Blau-

velt, 115 N.J.Eq. 501, 171 A. 500, in which the following rule is affirmed (page 501):

> " 'When a grantee attempts to support a conveyance by proof of an antecedent debt, the proof should be *convincing* and should disclose with some detail and precision the amount of the debt. "Claims of this kind should also be regarded with watchful suspicion, and when attempted to be exerted against creditors upon the evidence of the parties themselves, uncorroborated by other proof, they should be rejected at once, unless their statements are so full, clear and convincing, as to make the fairness and justice of the claim manifest." Besson v. Eveland, 26 N.J.Eq. 468; Cramer v. Cale, 72 N.J.Eq. 210, 73 A. 813.' " (Emphasis supplied.)

In both Schwartz and Camden, the making out of a prima facie case that the conveyance was fraudulent was sufficient to place upon the grantee the onus of proving the antecedent indebtedness to establish fair consideration. In fact, proof of an antecedent indebtedness would here be at the heart of the charge of a fraudulent conveyance. Defendant's position would make necessary a finding of fraud before inquiring into the matter of antecedent indebtedness.

Defendant, however, resourcefully refers to the case of Franklin National Bank v. Freile, Ch.1934, 116 N.J.Eq. 278, 173 A. 93, 94, in which the court prepared syllabus (headnote 1) contained the following:

> "On a creditors' bill to set aside the transfer of a property as fraudulent, the burden to prove consideration is on defendant and the proof must satisfy the court of the *bona fides* of the transaction."

Defendant points out that although the court's decision was affirmed on appeal, E. & A. 1934, 117 N.J.Eq. 405, 176 A. 167, the Court of Errors and Appeals took exception to the above quoted section of the syllabus by stating that:

"* * * we deem it well to note that the rule laid down in the first syllabus as prepared by the Vice Chancellor is much broader than required by the facts of the case, and not supported to that extent by the cases cited, both of which involved, as in the present case, transfers of property to a near relative."

But in the very next sentence, the court destroys this temporary source of comfort by making the following observation (117 N.J.Eq. at page 405, 176 A. at page 167):

"A similar situation obtained in Coleman v. Graff. 94 N.J.Eq. 223, 119 A. 280, and in Babinecki v. Virgil, 97 N.J.Eq. 315, at page 319, 127 A.2d 594, 595, 39 A.L.R. 171, where we said: 'The burden of proving, when attacked as fraudulent, the consideration of a deed, *where no consideration was paid at the time of the conveyance,* is upon the grantee.'"

■ Since defendant Paskow admits that no consideration was paid at the time the mortgage was given on December 20, 1956, and sufficient evidence having been introduced to make out a prima facie case of fraudulent transfer, it was his burden to prove, clearly and convincingly, his allegation of an antecedent indebtedness. Has he done so? Let us examine the record.

A detailed recapitulation bearing upon Paskow's alleged transactions with Vreeland Siefert was set out earlier in this opinion. It is noted that the four promissory notes from Vreeland Siefert to Paskow, totalling $9,000 (the fifth note, for $8,500, given on December 20, 1956, was for the indebtedness allegedly still outstanding and unpaid); bear the dates October 25, 1955 (for $2,500, payable in three months); October 1, 1956 (for $2,000, payable in two months); October 30, 1956 (for $2,500, payable on demand); and November 16, 1956 (for $2,000, payable on demand).

One would reasonably expect that on the above dates, a check for the amount stated in each note, or an amount bearing some relationship to it, would have been given by Paskow to Siefert. Or, if no check were given, one would expect a signed receipt, or other evidence, of the giving of cash. No documentary evidence of cash transactions was offered by defendant, and his checks, offered into evidence by the *plaintiff,* show that they originated out of various accounts, signed by Paskow, and made out to himself. They are as follows:

| Account | Date | Check No. | Amount | Exhibit No. of Original | Exhibit No. of Photo. |
|---------|------|-----------|--------|------------------------|----------------------|
| Management Account Agent for | Aug. 1, 1955 | 893 | $1,000 | P9* | P9a |
| Highline Corp. Agt., Dorolu | Aug. 1, 1955 | 374 | 1,000 | — | P58** |
| Realty Co. Agt. for | Aug. 3, 1955 | 218 | 1,500 | P8** | |
| 22 Park Place Agt., Dorolu | May 9, 1956 | 131 | 1,000 | P11* | P11a |
| Realty Co. Agt. for | May 18, 1956 | 341 | 1,000 | P15* | P15a |
| 22 Park Place Agt. for | Jul. 31, 1956 | 144 | 2,500 | P12* | P12a |
| 22 Park Place | Oct. 4, 1956 | 155 | 2,000 | P13* | P13a |

(*) Checks with notation "re Siefert".
(**) Checks with notation "exchange".

Although the total *amount* of these checks (disregarding check No. 374) coincides with Paskow's contention that he made loans to Siefert totalling $9,000, there is no convincing evidence that these checks represent the alleged loans. All the checks, as stated above, were signed by Paskow and made out to himself. The notations "exchange" are obviously not self-explanatory. The notations "re Siefert" appear only on the *original* checks, but *nôt* on the bank's photostatic copies of these checks, conclusive of the fact that the notations "re Siefert" were placed on the checks, not at the time they were issued, but only at some time after they were returned from the bank. When confronted with this situation Paskow stated that he must have forgotten to note the reference to Siefert on the check at the time it was drawn and that he or his secretary made the notation some time after the checks were returned from the bank to him.

Paskow's further explanation that he would cash the checks and give the proceeds to Siefert in each case and that he would not take a receipt for the cash, and his explanation concerning many other transactions with Lincoln Foundry, Inc. is simply incredible. He would have it believed that he lent Siefert, neither a close friend nor relative, sums varying in amounts from $1,000 to $2,500, to an aggregate of $9,000, within a 15 month period, with only the oddly dated notes as evidence and no record of the transfer of cash items by way of a signed receipt by Vreeland Siefert. It would appear that time after time, Siefert, having defaulted on one loan, Paskow would reward him by granting another and that he was reimbursed only to the extent of $500, during this 15 month period. For all of this together with the transfer of funds that constituted the many transactions with Lincoln Foundry, Inc., directly during 1956, Paskow claims that his total remuneration was not more than $500 to $600, in payment for his "time". That a man of Paskow's experience in the financial community should conduct himself in his dealings as disclosed in this case with Siefert, a comparative stranger, with either such a trusting faith or complete naïveté is to overtax credulity. Paskow has fallen far short of clearly and convincingly proving his antecedent indebtedness.

The Sieferts, as noted earlier, pleaded a denial of any wrongdoing. However, the facts and circumstances disclose that they acted in close concert with Paskow. They knew that the mortgage of December 20, 1956 was given to Paskow at a time when the Lincoln Foundry, Inc., and they, were hopelessly bankrupt. Eighteen days after the giving of the mortgage and one day before the bankruptcy of the Lincoln Foundry, Inc., they made a conveyance of the Oceanport property to Paskow's nominee, Greene. Five days after the involuntary petitions in bankruptcy were filed against them, the Greene-Sudler conveyance was consummated on April 23, 1957, for a consideration entirely contrived.

An additional mysterious and never satisfactorily explained phenomenon is that the mortgage of December 20, 1956 bears upon it the following legend signed by Paskow: "January 8, 1957. This mortgage being fully paid and satisfied the Registrar is hereby authorized to cancel same of record. Seymour Paskow."

■■ Paskow contended, in connection with the conveyance from the Sieferts to Greene, that it had always been his intention to liquidate the property, satisfy his $8,500 mortgage and remit any balance to the Sieferts, subjecting the latter portion to the claims of the Sieferts' creditors. And he argues that his position is not different from one maintained in the case of Kielb v. Johnson, 1956, 23 N.J. 60, 127 A.2d 561. There, however, the court did sustain a finding that the consideration the defendant paid an insolvent vendor for his property was "fair" and that there was no actual or constructive fraud upon the part of the defendant transferee. Further, there was no involvement of antecedent indebtedness and the facts other-

wise were entirely different from those at bar.

The multiple mortgage and deed transactions can lead only to the irresistible conclusion that the Sieferts and Paskow, with the incidental assistance made available by Greene and Sudler, sought to illegally sequester this property until such time as its disposal could be arranged. The proceeds of its sale, after the liquidation of mortgage encumbrances would then be divided between them. (Paskow would receive $8,500 and the Sieferts the balance, viewing the Paskow version, above, at its best.) All this was done with intent to hinder, delay or defraud existing creditors of the Sieferts, contrary to the intendment of Section 67, sub. d(2) (d) of the Bankruptcy Act.

Finally, late in the case Paskow introduced a claim to have advanced Siefert another $500 "in reliance" on the mortgage of December 20, 1956. Siefert is said by Paskow to have repaid this loan by a check which developed such acute infirmities that when deposited by Paskow it cost him $525.12 to redeem it, with protest fees, on January 24, 1957. Since this transaction occurred after the mortgage of December 20, 1956, and in the light of the hazy proof thereof, except Paskow's assertions, no ruling is made thereon here. If he still is in time to file a claim with the trustee as a general creditor and is disposed to do so, it may be allowed or not depending upon proper proof.

The foregoing shall constitute findings of fact and conclusions of law fulfilling the requirements of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

In addition, I formally find as

Facts.

1. That the mortgage of December 20, 1956, given by Vreeland L. Siefert and Myrtle A. Siefert to Seymour Paskow, recorded in the office of the Clerk of Monmouth County, on December 24, 1956, in Book 1951 of Mortgages, page 486;

the deed from the said Vreeland L. Siefert and Myrtle A. Siefert to John F. X. Greene, dated January 8, 1957, recorded in the said Clerk's office on January 14, 1957, in Deed Book 2729, page 550;

the deed from John F. X. Greene and Dorothy Greene, his wife, to Sudler Construction Company, dated April 23, 1957, recorded in said Clerk's office on April 25, 1957, in Deed Book 2752, page 190; and

the purchase money mortgage given by the Sudler Construction Company to the said John F. X. Greene, dated April 23, 1957,

all of which instruments cover the property of the said Vreeland L. Siefert and Myrtle A. Siefert in Oceanport, Monmouth County, New Jersey, as therein described, were devices in a scheme whereby Vreeland L. Siefert and Myrtle A. Siefert and Seymour Paskow sought to conceal the said property from the creditors of the said Sieferts with the purpose that the Sieferts and Paskow would share in the proceeds of a sale which would be made, of which the said creditors would have no knowledge.

2. That the said Vreeland L. and Myrtle A. Siefert were insolvent on December 20, 1956 within the meaning of the Bankruptcy Act.

3. That the said insolvency of the Sieferts was known to Seymour Paskow on December 20, 1956, and thereafter when the instruments described in the foregoing paragraph 1 were delivered.

4. That the effective date of the bankruptcy of Vreeland L. and Myrtle A. Siefert was on the date of the filing of the involuntary petitions against them, viz., April 18, 1957.

5. That all of the instruments described in the foregoing paragraph 1 were delivered within four months of the date of bankruptcy of the said Vreeland L. and Myrtle A. Siefert, or within five days thereafter.

I further find as

## Conclusions of Law.

A. That the mortgage made by Vreeland L. and Myrtle A. Siefert on December 20, 1956, and their deed to John F. X. Greene, dated January 8, 1957, as described in paragraph 1 of the Facts above, are fraudulent, respectively, as an obligation made by them and a transfer made by them within one year prior to the filing of a bankruptcy petition against them, because they were made without fair consideration, while they were insolvent and because they were made with actual intent to hinder, delay or defraud their creditors in violation of Section 67, sub. d(2) (a) and (d) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d, 2(a) and (d).

B. That the Sudler Construction Company, grantee in the deed from John F. X. Greene, et ux., to it, dated April 23, 1957, described in paragraph 1 of Facts foregoing, was not a bona fide purchaser and that deed and the purchase money mortgage given by Sudler Construction Company to John F. X. Greene, likewise described in said paragraph 1 of Facts foregoing, are void as being without consideration.

C. That plaintiff, Ezra Karkus, trustee of the said Vreeland L. and Myrtle A. Siefert, bankrupts, is entitled to a judgment that the said mortgage made by Vreeland L. and Myrtle A. Siefert to Seymour Paskow, dated December 20, 1956, as described in paragraph 1 of Facts foregoing, should be set aside as null and void and for nothing holden and that the other instruments described in the said paragraph 1 of Facts foregoing, namely, the deed from Vreeland L. and Myrtle A. Siefert to John F. X. Greene, dated January 8, 1957; the deed from John F. X. Greene to Sudler Construction Company, dated April 23, 1957, and the purchase money mortgage from the Sudler Construction Company to John F. X. Greene shall also be set aside as null and void and for nothing holden.

The plaintiff should move to settle an order for judgment in conformity with the foregoing findings.