**In re BUFFALO RESTAURANT EQUIPMENT, INC., d/b/a Bison City Icemakers, Debtor.**

**Mark S. Wallach, Trustee in Bankruptcy of Buffalo Restaurant Equipment, Inc., Plaintiff,**

v.

**Henry Kurowski, Defendant.**

**Bankruptcy No. 98–15124 K.
Adversary No. 00–1069 K.**

United States Bankruptcy Court, W.D. New York.

Oct. 23, 2002.

Mark S. Wallach, Penney, Maier & Wallach, Buffalo, NY, trustee.

Michael O. Morse, Buffalo, NY, for Defendant.

### DECISION AFTER TRIAL

MICHAEL J. KAPLAN, Bankruptcy Judge.

This case presents an interesting question, apparently of first impression.

In a fraudulent conveyance action in which a corporation paid cash to the transferee, and the transferee shows that the "past consideration" was a loan to the principal of the corporation, is it a complete defense to show that loan proceeds are traceable into the corporate bank account? Stated otherwise, *must a plaintiff/trustee prove that a debtor corporation which paid a loan owed by its principal, obtained no benefit from that loan?*

The Court answers the question in the affirmative if, and only if, the defen-

dant/transferee has shown that the loan proceeds are traceable into the corporate account. (See the final footnote in this Decision for an important event.)

N.Y. Debt. & Cred. Law §§ 272–275 states:

§ 272.   Fair Consideration

Fair consideration is given for property, or obligation,

a.   When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b.   When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

§ 273.   Conveyances by insolvent

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

§ 273–a.   Conveyances by defendants

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

§ 274.   Conveyances by persons in business

Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a

business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

§ 275. Conveyances by a person *about to incur debts*

Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

(McKinney 2001)

## BACKGROUND—LOAN TO INDIVIDUAL DOES NOT NEGATE BENEFIT TO HIS OR HER CORPORATION

This is a fraudulent conveyance action under the Uniform Fraudulent Conveyances Act (as adopted in New York, N.Y. Debt. & Cred. Law §§ 270–281), and not under 11 U.S.C. § 548. It is the classic three-party loan transaction, in which a loan made to the principal of a corporation (Mr. Abrazek) is repaid in part by the Debtor corporation during the six year look-back period. What makes the case unusual is the existence of unequivocal evidence that $20,000 of the loan[1] made to the individual was, for unknown reasons, made payable by the lender (Mr. Kurowski) by check to the corporation, not the individual.

Of course the Defendant claims that the loan, therefore, must be viewed as having been made to the corporation, so that repayment by the Debtor corporation was supported by fair, antecedent, consideration. The Trustee, naturally, argues that the check proves nothing—the individual may have told the creditor to make that amount payable to the corporation to repay to the corporation a loan owed by the individual to the corporation, for example. That would not create a debtor/creditor relationship between the corporation and the lender. There may be numerous other licit and illicit explanations for why the individual wanted the lender to make $20,000 of the loan payable to the corporation, ranging from a contribution to capital, to hiding it from relatives or creditors, to doctoring the corporation's books or the individual's books. Or, indeed the $20,000 may have been critical in developing the Debtor's business. We just don't know. In the Trustee's view, the $19,000 made by the Debtor to Kurowski on Kurowski's loan to Abrazek was a "gift" at the expense of the Debtor's other creditors.

■ As will be explained, the Court finds that the loan, including the $20,000 that was made payable to the corporation, was unequivocally a loan to Abrazek the *individual*, not to the Debtor *corporation*. But the cases have established that such a finding does not end the inquiry. Thus it has been said that

> a debtor may sometimes receive "fair" consideration even though the consideration given for his property or obligation goes initially to a third person. . . . [T]he transaction's benefit to the debtor "need not be direct; it may come indirectly through benefit to a third person." . . . If the consideration given to the third person has ultimately landed in the debtor's hands, or if the giving of the consideration to the third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth

---

**1.** Although it was a larger loan, only $19,000 is challenged as a fraudulent transfer, and $20,000 is shown to have been made payable to the debtor corporation.

has been preserved, ... provided ... that the value of the benefit received by the debtor approximates the value of the property or obligation he has given up. *Rubin v. Manufacturers Hanover Trust,* 661 F.2d 979, 991 (2nd Cir.1981) (internal citations omitted).

And it has been said that "[w]hile [that proposition] has most often been applied in cases decided under the fraudulent conveyance provisions of federal bankruptcy law, its approach to indirect benefits is equally applicable under the parallel provisions of the UFCA"and that "the fact-finder must first attempt to measure the economic benefit that the debtor indirectly received from the entire transaction, and then compare that benefit to the value of the property the debtor transferred. The mere fact that the debtor received *a* benefit is therefore insufficient to find fair consideration." *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 638 (2nd Cir.1995). (emphasis in original) (quoting *Rubin,* 661 F.2d at 993).

What the cases do not tell us, and what therefore appears to be a matter of first impression, is whether the Trustee must carry the burden to establish that the $20,000 that was received by the corporation did not, in fact, benefit the corporation. Or must Kurowski the Defendant, establish that it *did* benefit the corporation?

More precisely, is the benefit/no-benefit element an essential part of the overall burden of proof that the Trustee must carry, or is it part of the "burden of going forward" that rests on the Defendant after the Trustee has established that the loan was not made to the corporation and that the corporation repaid the loan while insolvent.

It seems that it is only when loans are among *family members* that the burden

becomes clear—where a family member received what appears to be a transfer without fair value and asserts that the transfer was on account of an antecedent debt, the defendant family member must prove such antecedent debt by "clear and convincing evidence." See, for example *Schwartz v. Battifarano,* 2 N.J. 478, 67 A.2d 148 (1949) and *Johnson v. Lentini,* 66 N.J.Super. 398, 169 A.2d 208 (Ct.Ch.Div. 1961) and the numerous cases cited in those cases. And see this Court's decisions in *In re Dziadosz,* Ch. 7 Case No. 97–11056–K, Adv. No. 98–1355, 1997 WL 33126250 (Bankr.W.D.N.Y., June 23, 1997), and *In re Skalski,* 257 B.R. 707 (Bankr. W.D.N.Y.2001).

There is nothing here to suggest any relationship between the lender and the borrower other than a long casual acquaintance and a perception by the lender that the borrower was a successful businessman who could repay the debt, with interest.

### ANALYSIS; Generally

■ Among the transactions that are most commonly attacked as fraudulent transfers are two types of transactions that are not at all like each other. The first is a "sale" that is challenged as being in fact a "gift," and the second is a repayment of an "antecedent debt" which debt is disputed. It is perfectly appropriate as to the first type to say that "[e]ven though it appears that the transferor was insolvent or rendered insolvent at the time of the conveyance, it is still necessary *to bring the case within the statute* to show that the conveyance was made without fair consideration, and the burden is upon the [plaintiff] to prove it."[2] (emphasis added). Thus, if it is a piece of land or some chattel that has been conveyed by the debtor to a transferee, the burden is on the plaintiff to

**2.** 30 N.Y. Jur.2d *Creditor's Rights and Reme-*    *dies* § 340 (case authorities omitted) (1997).

establish that the price paid was not "fair consideration." For example, Blackacre was deeded over for one dollar, but was actually worth $100,000.

The second is an alleged repayment of an alleged loan. A plaintiff might have no evidence at all that there ever was a loan to anyone. All a trustee might be aware of in a typical bankruptcy case is that the debtor's checking account prior to bankruptcy showed one or more payments to an individual who is not shown in the debtor's books and records to be a lender, supplier, employee, etc. It would only be by virtue of an affirmative defense of "antecedent debt" that such a trustee might learn of the actual nature of the transfers and the bona fides of the defense. Consequently, it simply cannot be the rule that in all cases the trustee cannot make a *prima facie* case unless he or she can demonstrate facts that make clear that there can be no defense.

No fiduciary ever will be required by this Court to prove that no set of facts could possibly exist that might present a defense. Indeed, the very definition of "affirmative defense" provides sound guidance. It is defined in Black's Law Dictionary (7th ed.1999) as "[a] defendant's assertion raising *new facts and arguments* that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." (emphasis added).

As has been said:

The defendant has the burden of proof of affirmative defenses, which in effect assume the truth of the allegations of the complaint and present new matter in avoidance thereof, such as a release, the application of foreign law, laches, or the statute of limitations.

. . . .

[However], where the defendant in what would appear superficially to be an affirmative defense, but which, in reality, is a negation of the plaintiff's case, sets forth facts controverting the allegations of the plaintiff's cause of action, the burden of proof remains on the plaintiff as to such matters. Where a statute provides for certain affirmative defenses, the burden of proof regarding such matters is upon the defendant.[3]

Statutes sometimes leave us with no doubt. For example, 11 U.S.C. § 547(g), dealing with preferential transfers, expressly places the burden on the plaintiff/trustee "of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the non-avoidability of a transfer under subsection (c) of this section." But the UFCA provides no such guidance.

We ask in the present case, therefore, whether the defense that the Debtor corporation received $20,000 is an affirmative defense or merely the negation of the Trustee's "required" allegation that the payments were made by the corporation to the defendant "without fair equivalent value" or "without a fair consideration." And there can be no doubt that

[t]he burden of proof of a negative allegation which is essential to the cause of action . . . rests upon the party who pleaded it; the burden of proof is not to be shifted from him or her because of the difficulty inherent in proving a negative. An illustration of a negative allegation appears where a cause of action based upon a statute is taken out of an exception to the statute by allegation.[4]

---

3. 57 N.Y. Jur.2d, *Evidence and Witnesses* § 164 (case authorities omitted) (2000).

4. 57 N.Y. Jur.2d, *Evidence and Witnesses* § 166 (case authorities omitted) (2000).

Consider the very last quoted statement. Hypothesize a statute that says that Plaintiff may recover from Defendant if Defendant commits a particular Act, but not if that Act is consistent with a recognized Justification. If an allegation that no Justification exists is recognized to be an essential element of the cause of action, then it is a "negative allegation" the burden of which remains with the Plaintiff regardless of the difficulty inherent in proving all of the necessary negatives. But if the existence of a Justification is viewed as an affirmative defense, then the burden of "proof" as to the Justification will be upon the Defendant.

That is precisely the dichotomy before this Court.

### GUIDANCE IN OPPOSITE DIRECTIONS

There are two general propositions of New York Law that provide some guidance, but toward conflicting ends.

The burden of proof is upon one asserting a privilege or right in derogation of the common law. The rule is that where a statute creates a right unknown to the common law, the burden of establishing such statutory right rests upon the person asserting it.

The burden rests upon the party who, as the basis of his or her claim or defense, asserts that he or she is within an exception to the operation of a statute otherwise of general application. Also, if the existence of a cause of action depends upon the case's not being within an exception to a statute, it is necessary in the pleadings to negative the application of the exception to the case stated. A pleader who relies upon the statute as the basis of his or her cause of action must take his or her case by pleading and proof out of an exception but may leave to his or her adversary the allegation and proof of the facts which will defeat the cause of action because of a proviso.

The circumstance that an essential allegation, in the statement of a cause of action, taking the case out of an exception is in the negative form, does not remove the burden of proof from the party who pleads it, since the burden of proof to establish every essential allegation by a fair preponderance of the evidence must rest upon such party.

57 N.Y. Jur.2d, *Evidence and Witnesses* § 172 (case authorities omitted) (2000).

This "guidance" is, of course, not crystal clear, but its focus upon whether the statute upon which the action is based is consistent with common law or is in derogation of common law, is suggestive in the Trustee's favor. That is because (despite some casual observations seemingly to the contrary,[5]) there can be no doubt that remedies for fraudulent conveyances did exist

**5.** See, for example, footnote 7 in the United States Supreme Court's decision of *Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999), wherein the Supreme Court notes "Several States have adopted the Uniform Fraudulent Conveyance Act (or its successor the Uniform Fraudulent Transfers Act), which has been interpreted as conferring on a nonjudgment creditor the right to bring a fraudulent conveyance claim. Insofar as Rule 18(b) applies to such an action, the state statute eliminating the need for a judgment may have altered the common-law rule that a general contract creditor has no interest in his debtor's property. Because this case does not involve a claim of fraudulent conveyance, we express no opinion on the point." (internal citation omitted). [The reference to Rule 18(b) is a reference to the Federal Rule of Civil Procedure that permits a claim for money judgment to be joined with a claim to set aside a fraudulent conveyance, even if underlying substantive law would prohibit a fraudulent conveyance action until a money judgment has been obtained.]

at common law. Professor Garrard Glenn observed in Volume 1 of *Fraudulent Conveyances and Preferences* (Baker, Voorhis & Company rev. ed., 1940 N.Y.), §§ 58 through 62(b), that "Our notion of the fraudulent conveyance traces to a statute of Elizabeth ... and commonly called the Statute of Fraudulent Conveyances.... It has often been stated, the authorship being traceable to no less an authority than Lord Mansfield, that even if this statute had not been passed, creditors could have obtained the same relief at common law."

The High Court of one of our Sister States, the State of Connecticut, in 1902 stated

As early as 1647 our general court declared the secret conveyance of land, upon the ownership of which creditors had relied in obtaining [sic] credit, "to be contrary to a righteous rule—that every man should pay his debts with his estate, be it what it will, be real or personal," which estate, if insufficient to pay all creditors, each one shall have a "suitable proportion to pay his debt." This rule of righteousness and broad principle of public policy belongs to our common law, and has influenced the course of legislation and judicial decisions in respect to insolvency. So far, however, as it relates to the delusion and injury of creditors through secret conveyance of land, it rests upon the principle, common to all jurisprudence, which imposes upon every man the duty of surrendering, to those justly entitled, property in his legal possession which in equity and good conscience he ought not to retain, and which forbids any one to assert his right when, in equity and good conscience, he ought not to assert them against one who has been injured and deceived through his conduct in respect to such rights. This principle underlies the statutes against fraudulent conveyances, against preference of creditors

with a view to insolvency, the rule of policy limiting the transfer of property without surrendering its possession, the doctrine of equitable estoppel, and influences the determination of many questions of fraud.

*Curtis v. Lewis*, 74 Conn. 367, 50 A., 878, 881 (1902) (internal citation omitted).

To this writer, "the common law rule that a general contract creditor has no interest in his debtor's property" (see footnote 5) does not mean that fraudulent conveyances were permitted at common law. Rather, it means that at common law only judgment creditors could set aside fraudulent conveyances. Expanding to creditors who did not have a money judgment the "standing" to do so was just that—an "expansion," not a "derogation," of common law.

The modern fraudulent conveyance action is not in derogation of common law. Therefore, it is not dependent on the statute, and the Trustee in this case is not required to allege the nonexistence of conditions under the statute that would defeat recovery. Score "one" for the Trustee.

However, there is authority to the effect that such a matter as this rests upon the question of whether the existence of the requisite degree of "consideration" to support a transfer operates as an "exception" or as a "proviso." As quoted from § 172 of 57 N.Y. Jur.2d above, "[a] pleader who relies upon the statute as the basis or his or her cause of action must take his or her case ... out of an exception but may leave to his or her adversary the allegation and proof of the facts which will defeat the cause of action because of a proviso."

Very specific guidance as to the distinction is provided in the case of *Rowell v. Janvrin*, 151 N.Y. 60, 45 N.E. 398 (1896). There the Court of Appeals was dealing with a general statute enacted in 1848

which was modified in 1853 to provide an exception.[6] The Court explained this:

> The whole controversy presented by the appeal really turns ... upon the question whether the amendment of 1853 is to be treated as an exception or a proviso. If the latter, the plaintiff was not bound to anticipate if by negative allegations in his complaint, but might leave it to his adversary, as matter of defense. The reason upon which this rule of pleading rests seems to be that when a party counts upon the enacting clause of a statute containing an exception, as the foundation of his action, he cannot logically state his case unless he negative the exception. But if the modifying words are no part of the enacting clause, but are to be found in some other part of the statute, or in some subsequent statute, it is otherwise; and he may then state his case in the words of the enacting clause, and it will be *prima facie* sufficient. When we bear in mind the reason of the rule, and the necessity for pleading the negative, it is not very important to deal with the somewhat vague and shadowy distinctions which are to be found in the books between an exception and a proviso. But the distinction, however difficult to state, has always been recognized. An exception exempts something absolutely from the operation of a statute, by express words in the enacting clause. A proviso defeats its operation conditionally. An exception takes out of the statute something that otherwise would be part of the subject-matter of it. A proviso avoids them by was [sic] of defeasance or excuse....

The plaintiff has stated a case under the tenth section of the original act. When that was passed, it contained no exception, and remained in that condition for five years, till the passage of the amendment of 1853. An exception is generally part of the enactment itself, absolutely excluding from its operation some subject or thing that otherwise would fall within its scope. But when the enactment is modified by ingrafting upon it a new provision, by way of amendment, providing conditionally for a new case, it is in the nature of a proviso. The statute of 1853 has all these characteristics. It was passed five years after the enactment which it modified. It was not an absolute permission to issue the stock for property generally, but only such property as was necessary in the corporate business; and the amount of stock to be thus issued could not lawfully exceed the fair value at which it should, honestly and in good faith, be estimated by the directors. The amendment took out of the original act a special case, and provided specially for such a case. It ingrafted a limitation upon the broad and general language which the legislature had originally employed in constructing the tenth section, and that, as we understand, is the main office of a proviso. It had the same effect as if it was attached to the original section, and was preceded by the usual words, "Provided, however," etc. If this view is correct, it follows that the plaintiff was not bound, by the strict rules of pleading, to negative the proviso. He could state a case within the terms of the original enactment, and leave the defendant to take the case out of it by plead-

---

6. The 1848 enactment made stockholders of certain corporations liable to enforce debts of the corporation where no certificate that the capital stock has been paid in had ever been mailed or filed. The 1853 amendment dealt with the circumstance where stock is issued not for cash, but for property purchased by a trustee of the corporation for the purchase of property necessary to the corporation's business, in which event stock taken for that property would not be subject to "further calls" or "further payments."

ing the facts constituting the special case provided for by the amendment.

... When the allegations of the answer were sustained by proof of the fact that the stock was issued, not for cash, but for property, then the defense would be complete, unless the plaintiff gave proof tending to show either that the property was not such as pertained to the business, or that it was deliberately overvalued for the fraudulent purpose of evading the statute. It would not be enough to show that there was an honest error of judgment on the part of the trustees in fixing the value, but must be shown that they acted in bad faith.

... For these reasons, the judgment dismissing the complaint without requiring defendant to give any proof should be reversed, and a new trial granted;

...

*Id.* at 67–70, 45 N.E. 398 (internal citations omitted).

So far, then, two things are clear, and they do not point in the same direction. Firstly, the Trustee's claim is not in derogation of the common law; therefore, he does not bear the burden of proving that his action is squarely within some statute that is in derogation of the common law. Secondly, and on the other hand, the common law action itself contained what must be viewed as an exception, rather than a proviso. This is the crux of the matter:

The Statute of Fraudulent Conveyances (The Act of 1571 (13 Eliz. c 5)) at Sec. 1 was a device "For the avoiding and abolishing of feigned, covinous and fraudulent feoffments, gifts, grants, alienations, ..." Clearly, this provision presupposed a secret transfer or a transfer for fraudulent purpose. Although this was enhanced and broadened over the years to deal with "constructive" fraudulent transfers—transfers while insolvent for less than fair consideration, it was an essential element of the common law cause that the transfer in question was "feigned" or "covinous" or "fraudulent."

This Court concludes that a plaintiff under the UFCA must plead the negative in good faith and after reasonable inquiry. And if, in response to the burden of going forward, the transferee shows that the transfer was repayment of a loan that made its way to the transferor, then the plaintiff must "prove the negative"—that there was no feint, no conversion, no fraud. Here the Trustee must prove that the $20,000 paid to the Debtor did not benefit it.

Though the Trustee rightly asserts that every Chapter 7 Trustee is handicapped by having no personal knowledge of the facts and is often handicapped by uncooperative principals or no principals to be found at all,[7] that is a limitation on the system, to be corrected by Congress or by the State, if warranted. (It was not too long ago that actions such as these had to be sued in State Court or U.S. District Court, where "knee-jerk" responses, if any, by judges were not necessarily favorable to trustees. Fraudulent transfer actions were never intended to be favored by presumptions for the benefit of the estate.[8])

---

**7.** See *In re Tremont Corp.,* 143 B.R. 989 (Bankr.W.D.N.Y.1992).

**8.** This writer is aware that this Decision encourages principals to "flush" personal loans through all the corporate accounts just in case he might later want a corporation to pay the personal debt. Hopefully, however, it will also lead to more 11 U.S.C. § 727(a)(3) and (7) complaints by trustees or creditors in bankruptcies of principals who, in so acting, failed to maintain books and records from which the financial affairs of the transferor corporation could be ascertained. If so, then any such conduct will soon prove unwise on the part of the principal-borrower.

## FINDINGS OF FACT

The Court makes the following findings of fact under Rule 52 of the Federal Rules of Civil Procedure.

1. Kurowski relied upon the reputation, acumen and skill of Abrazek (the principal), and with indifference to the financial condition of this Debtor or of any other Abrazek company. Consequently, Henry Kurowski made the loan to Frank Abrazek personally.

2. The $20,000 check was payable to and deposited in the account of debtor corporation.

3. The Debtor repaid $19,000 of that loan within 6 years before filing.

4. The Trustee presented no evidence that the loan proceeds did not benefit the debtor corporation.

## CONCLUSION

Judgment will enter for the Defendant, on the merits. Each side will bear its own costs.

SO ORDERED.